UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| GLENN VERSER, | ) |
| | ) |
| Petitioner, | ) |
| | ) Case No. 08-1343 |
| v. | ) |
| | ) |
| TERRY MCCANN, Warden, | ) |
| Stateville Correctional Center | ) |
| | ) |
| Respondent. | ) |

**ORDER**

Before the Court is Petitioner Glenn Verser's Petition for Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2254. For the reasons set forth below, the Court DENIES Verser's Petition [#4].

**BACKGROUND**

Verser objects to the disciplinary measures taken against him from an incident involving the prison school administrator, Heather Zahm, while he was incarcerated at the Centralia Correctional Center. As a result of the incident and the corresponding incident report, Verser was disciplined to six months C grade, six months segregation, revocation of good time credit for six months, and disciplinary transfer. Verser's § 2254 petition challenges the Livingston County state court's denial of his petition for writ of mandamus related to the disciplinary procedures involved. The Court will summarize the relevant facts.

According to Zahm's incident report, on December 20, 2005, at approximately 9:30 a.m., Verser "entered the Academic Office without permission, [] stated he needed to speak with [Zahm] in private, [] said I want to be in your circle [the law library] and if [Jesse] Wells [another inmate] can pass a polygraph test then we will be okay." (Ex. B at C-14).[1] She "asked [Verser] what he was talking about" to which Verser responded that he "kn[e]w [that she] and Wells [] have something going on, he follows you around like a dog in heat everywhere you go." (*Id.* at C-14, C-15). Zahm then called Sergeant Reuter on the radio asking him to come to the academic building. (*Id.* at C-15). Zahm's report stated that Verser responded "don't do that." (*Id.*). Zahm concluded her report by stating that she felt intimidated, that her welfare was threatened by Verser's comments, and that Verser did not have permission to leave the library and come into the academic office. (*Id.*); (Ex. F at 2-3). The report charged Verser with three offenses: 307 Unauthorized Movement, 304 Insolence, and 206 Intimidation or Threats. (Ex. B at C-14).

Verser disputes the underlying facts that gave rise to the incident report. According to his version, on December 20, 2005, after repeated requests to increase his law library time, he approached Zahm to "meet that request." (Petition, 2). During these attempts, Verser states that he discovered – by overhearing their plans to meet in the closet of the library – that Zahm was involved in a romantic relationship with Wells. (*Id.*) Verser states that he asked to speak to Zahm about his need for more time in the library and to discuss her personal reasons for denying his access. (*Id.*) Verser states that the above-referenced disciplinary report followed. (*Id.*)

---

[1] Exhibits are taken from Respondent's Answer.

Regardless of the underlying facts, the disciplinary report was served on Verser later that day, at 12:50 p.m. (Ex. B at C-14; Ex. F at 4). Verser signed the report acknowledging its receipt and also signed the waiver of 24-hour notice of charges prior to the conducting of a disciplinary hearing. (*Id.*) The disciplinary report also provided the following notice to Verser which was printed immediately above where he signed acknowledging receipt of the report:

> PROCEDURES APPLICABLE TO ALL HEARINGS ON
> INVESTIGATION AND DISCIPLINARY REPORTS
> You have the right to appear and present a written or oral statement or explanation concerning the charges. You may present relevant physical material such as records or documents.
> PROCEDURES APPLICABLE TO HEARINGS CONDUCTED BY THE
> ADJUSTMENT COMMITTEE ON DISCIPLINARY REPORTS
> You may ask that witnesses be interviewed and, if necessary, they may be called to testify during your hearing. You may ask that witnesses be questioned along lines you suggest. You must indicate in advance of the hearing the witnesses you wish to have interviewed and specify what they could testify to by filling out the appropriate space on this form, tearing it off, and returning it to the Adjustment Committee. If you are found guilty of a serious rule violation, you may be placed in confinement and/or lose privileges, and/or be required to make restitution. In addition, juveniles may receive a delay in recommended parole. (Ex. B at C-14).

The disciplinary report also contained a detachable section on which Verser could identify witnesses "he would like the Adjustment Committee or Program Unit to consider calling." (Ex. F at 3). This witness portion of the disciplinary report submitted by Verser in the state court record is blank and still attached to the disciplinary report. (Ex. B at C-14; Ex. F at 3-4).

The Adjustment Committee met later that day, December 20, 2005, at 2:00 p.m. (Ex. B at C-12-13; Ex. F at 4). The Adjustment Committee consisted of Chairman Raymond A. Ainslie and Christopher R. Pitts. (Ex. B at C-13). According to the

Adjustment Committee Final Summary Report detailing the hearing, the following took place:

Chairman Ainslie read the charges against Verser (*Id.*)

Verser pled not guilty to the charges (*Id.*)

Verser signed the 24-hour waiver (*Id.*)

Verser stated that he was not authorized to enter the academic office, and that it was his understanding that no one had to give him authorization to enter the office. (*Id.*)

Verser also stated that Zahn allowed him to enter the office when he knocked. (*Id.*)

Verser requested witnesses and asked that Internal Affairs investigate. (*Id.*)

- Verser's requested witnesses were inmates Clifton Bardo, James Debarbara, and Jesse Wells, and staff members Robert Stovall and Curtis Rueter. (*Id.* at C-12).

- Inmates Bardo, Debarbara and Wells testified while staff members Stovall and Rueter were not called because the Adjustment Committee concluded that their testimony would be irrelevant. (*Id.* at C-12).

- Inmate Bardo testified that he was not present when Verser and Zahm were in the office and knew nothing else. (*Id.*)

- Inmate Debarbara testified that he did not witness the conversation between Verser and Zahm, did not know anything about the allegations against Zahm and that Zahm is "standoffish and uppity." (*Id.*)

- Inmate Wells testified that he did not witness the conversation between Verser and Zahm and knew nothing else. (*Id.*)

Staff member Stovall was not called to testify because he was not working at the time of the incident. (*Id.*) Staff member Rueter's potential testimony was determined to be irrelevant because while he was called by radio to respond, he was not in the office during the incident. (*Id.*)

Verser alleged that Zahm denied him access to the law library for personal reasons, and that he did not threaten, manipulate, or coerce her. (*Id.*)

- 4 -

The Adjustment Committee believed Zahm's allegations as set forth in her report over Verser's version of events and held him responsible for the three violations. (*Id.* at C-13). Specifically, the Adjustment Committee found:

> Convinced [Zahm] feared for her personal safety from [Verser] due to tone and general statements alleging misconduct on her part. The committee further sustains that [Verser] did leave the library without permission. [Verser] was insolent in a manner and words in allegation of misconduct. [Verser] had entered the private [o]ffice which increased the level of personal risk for [Zahm]. (*Id.*); (Ex. F at 4-5)

The Adjustment Committee recommended discipline of six months C grade, six months segregation, revocation of six months of good conduct credit, and "max transfer" disciplinary transfer. (Ex. B at C-13; Ex. F at 5). Chief Administrative Office, Bradley J. Robert, approved the Adjustment Committee's findings and recommended discipline on December 20, 2005. (Ex. B at C-13). A copy of the Adjustment Committee's report was served on Verser on December 21, 2005, and this included a notice that Verser had a "right to appeal an adverse decision through the grievance procedure established by [IDOC] Rule 504. Subpart F." (*Id.*)

Verser was then transferred to the Pontiac Correctional Center where he filed a grievance on January 16, 2006. (Ex. B at C-16-20; Ex. F. at 5). Verser's grievance alleged that there was no evidence to support the Adjustment Committee's findings or demonstrate that he intended to injure Zahm and that Adjustment Committee Chairman Ainslie should have been excluded from participating as a decision maker at the hearing because he was a witness who had heard Zahm's radio call for assistance. (Ex. F at 5). The IDOC Administrative Review Board reviewed this grievance, interviewed Verser, and reviewed relevant documents. (Ex. B at C-20; Ex. F at 5). On February 23, 2003, the Administrative Review Board held a hearing, concluding "[b]ased on a review of all

information and a compliance check of the procedural due process safeguards outlined in [IDOC] Rule 504, the Board is reasonably certain that [Verser] committed the offense[s] and recommends the [January 16, 2006], grievance be denied. (*Id.*)  Roger E. Walker, Jr., Director of the IDOC, concurred with the Administrative Review Board's determination. (*Id.*)  On March 14, 2006, the Prisoner Review Board notified Verser that his good conduct credit revocation was being reduced from six to two months upon the Prisoner Review Board's recommendation and the IDOC Director's approval. (Ex. B at C-21; Ex. F at 6).

On May 8, 2006, Verser filed a petition for leave to file a mandamus petition and petition for a writ of mandamus in the Circuit Court of Livingston County naming as defendants IDOC employee Terry Anderson and IDOC Director Roger Walker. (Ex. B at C-4, C-6, Ex. F at 1).  In his petition for leave, Verser sought to compel defendants to: (1) provide him an impartial hearing; (2) allow him to call witnesses; (3) not retaliate; (4) protect his First Amendment right to speech; and (5) use IDOC grievance procedures for redress of staff misconduct. (Ex. F at 1).  In his petition for writ of mandamus, Verser alleged that: (1) the defendants were the designated persons for making determinations of grievances and revocation of good-conduct credit; (2) he had been denied the right to call witnesses, as demonstrated by the fact that the witness portion of the disciplinary report was still attached; (3) Chairman Ainslie should have been excluded from presiding over the Adjustment Committee hearing because he heard Zahm's call over the radio; (4) the charges against him were false and no evidence supported them; (5) he did not receive a written statement of the factual basis for the two months of good conduct revocation. (*Id.* at 1-2).  Verser's requested relief was an order: (1) reversing

the Adjustment Committee's ruling; (2) issuing a factual basis for the decision to deny his grievance and revoke two-months' good time credit; (3) treating Verser as if the infraction never occurred; and (4) granting Verser leave to file a brief in support of his petition for mandamus. (*Id.* at 3).

On July 10, 2006, Anderson and Walker filed a motion to dismiss, pursuant to 735 ILCS 5/2-615. (Ex. B at C-27; Ex. F at 6). On November 20, 2006, the Circuit Court granted the motion to dismiss and held that: (1) Verser had not alleged sufficient facts to state a mandamus claim; (2) Verser had been given the due process safeguards set forth in *Wolff v. McDonnell,* 418 U.S. 539 (1974); (3) Verser had been given the opportunity to present witnesses with relevant information; (4) there had been no violation of Verser's First Amendment rights; (5) restoration of good-conduct credit is discretionary, not mandatory; and (6) Verser received due process. (Ex. F at 6).

On appeal to the Appellate Court of Illinois, Fourth District, Verser argued that the Circuit Court erred in dismissing his petition for mandamus because his due process rights were violated in that: (1) he was not given the opportunity to call witnesses; (2) Adjustment Committee Chairman Ainslie should have been removed from the committee because he overheard Zahm's radio call; (3) no evidence supported the finding of guilt; and (4) no factual basis supported the denial of his grievance. (*Id.* at 9-10). Verser also argued on appeal that he had stated a First Amendment and statutory claim that the prison officials had refused to address his allegations of staff misconduct. (*Id.*) Finally, Verser argued that he never received a factual basis for the revocation of two months of good-conduct credit. The appellate court affirmed the circuit court.

Verser filed a petition for leave to appeal ("PLA") with the Supreme Court of Illinois raising the same claims, which was denied on May 29, 2008. (Ex. G, H).

Having exhausted his state court remedies, Verser filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, which is before this Court. In his petition, Verser argues that: (1) the trial court erred when it determined that petitioner failed to state a cause of action when he sought mandamus relief; (2) the trial court erred in weighing the factual sufficiency of the petition when the trial court was only required to determine the legal sufficiency of the petition under 735 ILCS 5/2-615; (3) the trial court abused its discretion when it failed to address petitioner's claim that the defendants failed to give a factual basis for why the good conduct credit was revoked; and (4) the appellate court abused its discretion in finding that petitioner was given the opportunity to call witnesses when the record reflects that his witnesses were not called. The Government filed its Answer and Verser filed his Reply. The Court will now address Verser's arguments.

## DISCUSSION

The Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996 modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas "retrials" and to ensure that state-court convictions are given effect to the extent possible under law. *Bell v. Cone*, 535 U.S. 685, 693-694 (2002). Under AEDPA, federal courts must show a high measure of deference to the fact findings made by the state courts. *Sanchez v. Gilmore*, 189 F.3d 619, 623 (7th Cir. 1999). To procure habeas relief under AEDPA, a petitioner is required to show that state court determinations under review are either "contrary to" or employ an "unreasonable

application of" federal law as determined by the United States Supreme Court. § 2254(d)(1). A petitioner can also attack a state court's adjudication on the grounds that it is based "on an unreasonable determination of the facts," but such attacks must be accompanied by a rigorous burden of proof: state court factual findings are presumed to be correct unless the petitioner rebuts the presumption with "clear and convincing" evidence. § 2254(e)(1). A habeas petition under § 2254 is the appropriate forum when a prisoner disputes having good time credits revoked. *Hadley v. Holmes,* 341 F.3d 661, 664 (7th Cir. 2003) (internal citations omitted). Verser's claims can be broken down into two categories: claims alleging that the state court improperly applied state laws and claims alleging due process violations. The Court will address each in turn.

**A.    Claims I and II are not cognizable under § 2254**

Because Verser's claim was adjudicated on the merits in state court, this Court may not grant his petition unless the state court's decision was contrary to or misapplied Supreme Court precedent, or was based on an unreasonable reading of the facts in light of the evidence. *See* 28 U.S.C. § 2254(d)(1), (2). Insofar as Verser's petition is based on asserted violations of Illinois law, there is no relief available under § 2254; federal habeas relief "is only available to a person in custody in violation of the United States Constitution or laws or treaties of the United States." *McAtee v. Uchtman*, 162 Fed.Appx. 621, 623 (7th Cir. 2006) citing *Dellinger v. Bowen,* 301 F.3d 758, 764 (7th Cir.2002). This Court will not reexamine state court determinations of state law questions. *See Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991) (holding that "[i]t is not the province of a federal habeas court to reexamine state court determinations of state law questions.")

Verser's first two claims allege that the trial court erred when it determined that he failed to state a cause of action when he sought mandamus relief and that the trial court erred in weighing the factual sufficiency of the petition when the trial court was only required to determine the legal sufficiency of the petition under 735 ILCS 5/2-615. In his Reply, Verser attempts to clarify these claims by stating that:

> Claim One raises an issue that the state court failed to follow Illinois' pleading rules for evaluating a mandamus claim that involves a due process claim. Claim Two asserts that the trial court misapplied the state procedural rule for evaluating a motion to dismiss involving a due process claim. (Reply 1-2).

Based upon the pleadings, the Court finds that Verser is arguing that the state court misapplied Illinois procedural law, and there is no relief available under § 2254. To the extent Verser alternatively characterizes these arguments as violations of his due process, this Court will address them as such below.

## B.    Claims III and IV relating to due process

Before reaching the merits of a petition for writ of habeas corpus brought pursuant to 28 U.S.C. § 2254, this Court must consider "whether the petitioner exhausted all available state remedies and whether the petitioner raised all his federal claims during the course of the state proceedings." *Farrell v. Lane,* 939 F.2d 409, 410 (7th Cir. 1991), *quoting Henderson v. Thieret,* 859 F.2d 492, 496 (7th Cir. 1988). If the answer to either of these questions is "no," then the failure to exhaust state remedies or procedural default bars the petition. *Id.* In other words, if a petitioner fails to give the state courts a full and fair opportunity to review his claims, then his petition must fail. *Bocian v. Godinez,* 101 F.3d 465, 468-69 (7th Cir. 1996).

Exhaustion of a federal claim occurs when it has been presented to the highest state court for a ruling on the merits or when it could not be brought in state court because a remedy no longer exists when the federal petition is filed. *Id.* Procedural default occurs when a claim could have been but was not presented to the state court and cannot, at the time the federal petition is filed, be presented to the state court. *Resnover v. Pearson,* 965 F.2d 1453, 1458 (7th Cir.1992). This occurs in one of two ways. First, a procedural default may occur when a petitioner fails to pursue each appeal required by state law, *Jenkins v. Gramley,* 8 F.3d 505, 507-08 (7th Cir. 1993), or when he did not assert the claim raised in the federal habeas petition in the state court system. *Resnover,* 965 F.2d at 1458-59. The second way in which a petitioner may procedurally default a claim is when a state court disposes of the case on an independent and adequate state law ground, regardless of whether that ground is substantive or procedural. *Coleman v. Thompson,* 501 U.S. 722, 728-29 (1991). Under Illinois law, "[i]t is well settled that issues not raised in the trial court are deemed waived and may not be raised for the first time on appeal." *Haudrich v. Howmedica, Inc.*, 662 N.E.2d 1248, 1253 (1994) (internal citations omitted.)

Federal review is barred for claims that are procedurally defaulted unless the petitioner can demonstrate cause and prejudice. *Engle v. Isaac,* 456 U.S. 107, 129 (1982); *Farrell v. Lane,* 939 F.2d 409, 411 (7th Cir. 1991). The terms "cause" and "actual prejudice" are not rigid concepts; they take their meaning from the principles of comity and finality but, in appropriate cases those principles will yield to the imperative of correcting a fundamentally unjust incarceration. *Engle,* 456 at 135. The fundamental miscarriage of justice exception is limited to the "extremely rare" and "extraordinary

case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup v. Delo,* 513 U.S. 298, 321 (2006).

In Claim IV, Verser argues that he was denied the right to call witnesses during the prison disciplinary hearing, in violation of his due process rights. The state appellate court held that he defaulted this argument because he did not present it in his original mandamus petition before the circuit court, but instead raised it in the first instance on appeal in his reply brief. (Ex. F at 14, 15). In addition to holding that the claims were defaulted, the appellate court ruled in the alternative that there was no due process violation on the witness issue. (*Id.* at 12-15).

The Court finds that Verser procedurally defaulted this claim because the appellate court held that it was barred by his failure to properly present it in the circuit court, which is an adequate and independent state procedural ground of decision. Verser does not argue, nor does this Court find, "cause" and prejudice for his default, nor actual innocence, and therefore the default bars federal review of this claim. Verser argues that the appellate court erred because the claim is "either procedurally defaulted or there was no due process violation—but not both." (Reply, 3). Verser's argument is unpersuasive because the Court interprets the appellate court's decision to be that Verser's witness claim was first procedurally defaulted but that even if it was not procedurally defaulted, it would not constitute a due process violation.

The Court will now address Verser's due process claims, which encompass his claims relating to an abuse of discretion by the circuit court judge. Verser has a liberty interest in earned-credit time, and therefore was entitled to due process before it could be taken away. *Piggie v. McBride,* 277 F.3d 922, 924 (7th Cir.2002). Verser renews the

arguments rejected by the state court that his prison hearing did not satisfy due process.

In the prison disciplinary context, due process requires only that the prisoner receive advance written notice of the charges, *see Wolff v. McDonnell,* 418 U.S. 539, 564 (1974), an opportunity to present testimony and documentary evidence to an impartial decision-maker, *id.* at 566, 570-71, and a written explanation for the discipline, *id.* at 564, that is supported by "some evidence" in the record, *see Superintendent, Mass. Corr. Inst. v. Hill,* 472 U.S. 445, 454-55 (1985); *Webb v. Anderson,* 224 F.3d 649, 652 (7th Cir. 2000). The right to present evidence is qualified-- prison officials may exclude evidence from an inmate's hearing to ensure institutional safety or correctional goals. *Wolff,* 418 U.S. at 566. In addition, prisoners do not have the right to call witnesses whose testimony would be irrelevant, repetitive, or unnecessary. *Id.; Forbes v. Trigg,* 976 F.2d 308, 317-18 (7th Cir.1992); *Piggie*, 344 F.3d at 677. Due process is satisfied if these requirements are met, regardless of the accuracy of the proceeding's outcome. *Lagerstrom v. Kingston*, 463 F.3d 621, 625 (7th Cir. 2006) (holding that even assuming fraudulent conduct on the part of prison officials, a petitioner fails to state a claim when the procedural due process protections as required in *Wolff v. McDonnell* are provided) (internal citations omitted).

The Court finds that the state appellate court properly cited and applied *Wolff* as the controlling federal law and correctly determined that Verser's due process rights were respected in the state prison disciplinary proceedings. The appellate court noted that: (1) Verser specifically waived the 24 hour notice of charges prior to the hearing by signing the portion of the disciplinary report acknowledging waiver; (2) Verser was given

the opportunity to call witnesses during the prison proceedings (and did call witnesses); and (3) there was a written statement detailing the evidence and reasoning for the disciplinary action. (Ex. F at 12-14; 17-20). The appellate court's findings are supported by the record. (*See* Ex. B).

Verser argues that there was a lack of factual basis for the revocation of his good conduct credit. He further argues that the Administrative Review Board review should be rejected because the date of the signature (November 8, 2005) is a date prior to when the alleged offenses occurred and is therefore, "made arbitrarily and capriciously.") (Petition, 11-20); (Ex. B at C-20). Verser also argues that the prison officials improperly relied on Zahm's version of events because she was allegedly engaging in sexual misconduct with Wells.

The Court does not find merit to Verser's arguments. The appellate court concluded that the November 8, 2005, date was an error because "[g]iven the other dates listed on the document, including the hearing date of February 23, 2006, the November 8, 2005, date was clearly a typographical error." (Ex. F at 18). This state court factual finding is presumed correct and Verser provides no evidence to rebut this presumption that the error is simply a typo. *See Rice v. Collins,* 546 U.S. 333, 338 (2006) (internal citations omitted). In addition, this Court does not find that the state-court decision was an unreasonable determination of the facts in light of the evidence presented to it. Further, the Court does not find the fact that the prison officials decided to believe Zahm's version of events over Verser's to be a due process violation, regardless of whether Zahm was telling the truth. *See Langerstrom,* 463 F.3d at 624-25

(holding that "[t]he fact (if it were true) that the evidence against [prisoner] had been made up would similarly not cast doubt on the basic procedures that were followed.")

In Claim IV, Verser argues that he was denied due process because he was unable to call certain witnesses. In his Reply, Verser maintains that he was never given an opportunity to call his witnesses. (Reply, 2). While the Court has already held argument to be procedurally defaulted, it also holds that this does not constitute a violation of his due process. The Adjustment Committee report of the hearing states that three of his witnesses, Inmates Bardo, Debarbara, and Wells were called, but the committee did not allow the testimony of staff members Stovall and Rueter because they deemed this testimony to be irrelevant. (*See* Ex. B at C-12-13). The Court does not find the exclusion of Stovall's and Rueter's testimony to constitute a due process violation because there is no right to call witnesses whose testimony would be irrelevant, repetitive, or unnecessary. *See Piggie,* 344 F.3d at 677 (internal citation omitted). The Court finds that both Stovall's and Rueter's testimony would have been irrelevant because neither of these individuals witnessed the incident in question. Verser also argues in his petition that he was unable to call Officers Chavez and Burton. (Petition, 13). Neither of these officers is mentioned in the state record, and would therefore be procedurally defaulted.

Further, even if a prisoner is improperly denied the right to call a witness, the denial must have affected the outcome of the proceedings because harmless error review is applied in the evaluation of prison disciplinary proceedings. *Piggie v. Cotton,* 342 U.S. 660, 666 (2003). Verser does not discuss what the non-called witnesses would testify to and fails to demonstrate that the non-called witnesses had any relevant

knowledge of what occurred during the incident. There is no evidence that the outcome of the proceedings would have been different, and accordingly, Verser cannot establish that there was an error in excluding these witnesses.

As such, relief under § 2254 is not warranted.

## CONCLUSION

For the reasons set forth herein, the Court DENIES Verser's Petition [#4].

ENTERED this 28th day of May, 2009.

                                          s/ Michael M. Mihm  
                                          Michael M. Mihm  
                                          United States District Judge